**In re Douglas Flynn MARTIN, Debtor.**

**Deborah Menotte, Plaintiff,**

v.

**Mark T. Pulte, Defendant.**

**Bankruptcy No. 00–33559–BKC–PGH.**

**Adversary No. 01–3210–BKC–PGH–A.**

United States Bankruptcy Court, S.D. Florida.

May 10, 2002.

Craig I. Kelley, West Palm Beach, FL, for debtor.

Lisa M. Schiller, Miami, FL, for trustee.

Jason E. Slatkin, Miami, FL, for plaintiff.

Andrew D. Zaron, Ft. Lauderdale, FL, for defendant.

***MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING TRUSTEE'S CROSS–MOTION FOR SUMMARY JUDGMENT ON ISSUE OF TRANSFER DATE***

PAUL G. HYMAN, Jr., Bankruptcy Judge.

**THIS MATTER** came before the Court on November 30, 2001 upon Mark T.

Pulte's (the "Defendant") Motion for Summary Judgment against Deborah Menotte (the "Trustee"). On January 9, 2002, the Trustee filed a Response in Opposition to Defendant's Motion for Summary Judgment (the "Response") and a Cross–Motion for Summary Judgment on Limited Issue of Transfer Date (the "Cross–Motion"). On January 28, 2002, the Defendant filed a Reply to Plaintiff's Response to Motion for Summary Judgment and Plaintiff's Motion for Summary Judgment on Issue of Transfer Date and Incorporated Memorandum of Law (the "Reply"). On February 8, 2002, the Trustee filed a Reply to Defendant's Response to Plaintiff's Cross–Motion for Summary Judgment on Limited Issue of Transfer Date (the "Trustee's Reply Brief"). On February 15, 2002 the Trustee and Defendant filed a Joint Stipulation of Undisputed Facts (the "Stipulation of Facts"). Having carefully reviewed the Motion for Summary Judgment, the Response and Cross–Motion, the Reply, the Trustee's Reply Brief, and the Stipulation of Facts, the Court hereby enters the following findings of fact and conclusions of law.

### FINDINGS OF FACT

In February of 1998, Douglass Flynn Martin (the "Debtor") entered into a Contract whereby the Debtor was to sell the parcel of real property located at 1780 S. Ocean Boulevard, Manalapan, Florida (the "Manalapan Property") for $4.4 million to Benjamin Kennedy. On March 20, 1998, Benjamin Kennedy assigned the Contract to the Defendant herein. Subsequently, the Debtor announced his intent not to close on the Contract.

On May 28, 1998, the Defendant brought an action for specific performance against the Debtor by filing a Complaint for Specific Performance in the Fifteenth Judicial Circuit in and for Palm Beach County, Florida (the "State Court Action"). The State Court Action sought to compel the Debtor to convey the Manalapan Property to the Defendant pursuant to the express terms of the Contract. In the State Court Action, the Debtor alleged *inter alia* that the property was sold for less than fair market value.

Ultimately, the Defendant prevailed in the State Court Action. Without making an express finding as to the Debtor's assertion that the property was sold for less than its fair market value, the State Court entered an Order Granting Summary Judgment in favor of the Defendant. On October 14, 1999, a Final Judgment of Specific Performance was entered by the State Court. The Final Judgment was recorded in the Public Records of Palm Beach County on October 27, 1999. The Debtor appealed the State Court's ruling, however, the ruling was affirmed on July 21, 2000 by Florida's Fourth District Court of Appeal. The District Court of Appeal issued a mandate that the Debtor convey the Manalapan Property to the Defendant in accordance with the Final Judgment.

On August 10, 2000, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On September 8, 2000, the Defendant was granted relief from the automatic stay to enforce his judgment. On October 20, 2000, the Honorable Stephen A. Rapp, Circuit Court Judge of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida executed the Warranty Deed on behalf of the Debtor. The Warranty Deed was recorded on October 20, 2000, in the Public Records of Palm Beach County, Florida.

On June 13, 2001, this case was converted from one under Chapter 11 to one under Chapter 7. Deborah C. Menotte (the "Trustee") became the duly appointed Chapter 7 Trustee of the Debtor's bankruptcy estate. On October 3, 2001, the

Trustee filed the Complaint for Avoidance and Recovery of Fraudulent Transfer and for Related Relief (the "Complaint"), instituting the instant Adversary Proceeding. In the Complaint, the Trustee asserts that the transfer of the Manalapan Property to the Defendant constitutes a fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(B) and Florida Statutes § 726.105(1)(b) and § 726.106(1). Accordingly, the Trustee seeks to avoid such transfer through the trustee's avoidance powers established under 11 U.S.C. § 544(b). The fourth count of the Complaint asserts that the Defendant "received and retained the Manalapan Property while the Debtor received less than reasonably equivalent value in return." As such, the Trustee seeks damages against the Defendant under a theory of unjust enrichment.

The Defendant's Motion for Summary Judgment seeks a determination that the transfer of the Manalapan Property was not a fraudulent transfer under any of the theories espoused by the Trustee. The Defendant argues that in the State Court Action the Debtor raised as a defense the assertion that he received less than fair market value for the Manalapan Property. As such, the Defendant argues that the Final Judgment of Specific Performance collaterally estops the Trustee from relitigating the issue of whether the Debtor received a reasonably equivalent value in exchange for the Manalapan Property.

The Defendant argues further that the transfer of the Manalapan Property occurred on May 29, 1998, the date the Defendant filed his Notice of Lis Pendens, rather than October 27, 1999, the date the Defendant recorded the Final Judgment of Specific Performance. Accordingly, the Defendant argues that the transfer took place outside the one year look back provision of 11 U.S.C. § 548(a)(1)(B).

Finally, the Defendant asserts that the Trustee's claim of unjust enrichment is without merit. The Defendant claims that unjust enrichment is an equitable remedy, appropriate only when one is without a suitable legal remedy. Here, however, the Defendant argues that the Trustee has legal remedies available, namely the remedies available under the Contract as well as the statutory remedies she has already asserted.

In the Response, the Trustee argues that genuine issues of material fact remain in dispute, and therefore summary judgment is inappropriate. Specifically, the Trustee argues that a dispute exists as to whether the Debtor received reasonably equivalent value in exchange for the Manalapan Property. Furthermore, the Trustee argues that a dispute of fact exists as to whether the Debtor was insolvent on the date of the transfer, or whether the Debtor became insolvent as a result of the transfer.

The Trustee asserts that she is not barred from arguing that the Debtor received less than the reasonably equivalent value for the Manalapan Property; this issue was neither necessary nor appropriate to the state court's judgment against the Debtor.

Finally, the Trustee argues that she may recover on a claim of unjust enrichment as the Debtor clearly conferred a benefit upon the Defendant, and that it would be inequitable for the Defendant to retain such benefit without paying the value thereof to the Trustee. The Trustee asserts that neither the Trustee nor the Debtor's bankruptcy estate were parties to the Contract, and therefore neither are bound by the terms of such Contract.

In the Trustee's Cross–Motion for Summary Judgment on Limited Issue of Transfer Date, the Trustee argues that

under Florida law the transfer of the Manalapan Property took place upon recordation of the Final Judgment for Specific Performance rather than the date the Defendant filed the Notice of Lis Pendens; *a fortiori*, the Trustee asserts that the transfer occurred on October 27, 1999, within one year of the Petition Date. In his Reply, the Defendant argues that if the Court were to accept the Trustee's logic, the Notice of Lis Pendens would be stripped of its value. The Trustee counters the Defendant's argument by asserting in the Trustee's Reply Brief that the Notice of Lis Pendens filed by the Defendant is inoperative, as the Notice was filed on May 29, 1998 and such notices are only effective for one year from the time of its recording. Accordingly, the Trustee argues that the Notice of Lis Pendens was not perfected as of the Petition Date.

### CONCLUSIONS OF LAW

The Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 1334(b), 157(b)(1), and 157(b)(2)(H). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(H).

Federal Rule of Civil Procedure 56(c), made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7056(c), provides that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Rice v. Branigar Org., Inc.,* 922 F.2d 788, 790 (11th Cir.1991); *Buzzi v. Gomez,* 62

F.Supp.2d 1344, 1349 (S.D.Fla.1999). Rule 56 is based upon the principle that if the court is made aware of the absence of genuine issues of material fact, the court should, upon motion, promptly adjudicate the legal questions which remain and terminate the case, thus avoiding the delay and expense associated with a trial. *See United States v. Feinstein,* 717 F.Supp. 1552 (S.D.Fla.1989). In considering a motion for summary judgment, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987) (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (citing Fed R. Civ. P. 1). "Summary judgment is appropriate when, after drawing all reasonable inference in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Salkin v. Slobodinsky (In re Saber),* 233 B.R. 547, 551 (Bankr.S.D.Fla.1999)(citing *Murray v. Nat'l Broad. Co.,* 844 F.2d 988, 992 (2d Cir.1988)).

The legal standard governing the entry of summary judgment has been articulated by the United States Supreme Court in *Celotex* and *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In *Celotex* and *Anderson,* the Supreme Court focused on the question of what constitutes a genuine issue of material fact within the meaning

of Rule 56. In *Celotex,* the Court held that the moving party may satisfy the burden imposed by Rule 56 in two ways: the moving party may submit affidavit evidence that negates an essential element of the non-moving party's claim and/or the moving party may demonstrate that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim. *See Celotex,* 477 U.S. at 328, 106 S.Ct. 2548.

In *Anderson,* the Court stated that the standard for summary judgment mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which provides that the trial judge must direct a verdict if there can be but one reasonable conclusion as to the verdict. *See Anderson,* 477 U.S. at 250, 106 S.Ct. 2505. The Court explained that the inquiry under summary judgment and directed verdict are the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

In order to defeat a motion for summary judgment under this standard, the non-moving party must do more than simply show that there is some doubt as to the facts of the case. *See id.* at 252, 106 S.Ct. 2505. Rule 56 must be construed not only with regard to the party moving for summary judgment but also with regard to the non-moving party and that party's duty to demonstrate that the movant's claims have no factual basis. *See id.* "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id.* Thus, the non-moving party must establish the existence of a genuine issue of material fact and may not rest upon its pleadings or

mere assertions of disputed fact to prevent a court's entry of summary judgment. *See First Nat. Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Resolution Trust Corp. v. Clark,* 741 F.Supp. 896, 897–98 (S.D.Fla.1990); *Pierre v. Welfare (In re Pierre),* 198 B.R. 389, 391–92 (Bankr. S.D.Fla.1996).

**I. As a Matter of Law, the Transfer of the Manalapan Property Took Place on October 27, 1999—The Date the Final Judgment of Specific Performance was Recorded.**

■ In Count I of the Trustee's Complaint, the Trustee seeks to avoid the transfer of the Manalapan Property asserting that such transfer is a fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(B). Specifically, section 548(a)(1) provides in pertinent part that:

> The Trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, **that was made or incurred on or within one year before the date of the filing of the petition** . . .

11 U.S.C. § 548(a)(1) (emphasis added).

The Defendant argues that "as a matter of law, the transfer occurred on May 28, 1998, the date Pulte filed his lis pendens in the public records of Palm Beach County, Florida." The Debtor filed his petition for relief under Chapter 11 of the Bankruptcy Code on August 10, 2000. As such, it is the Defendant's position that the Manalapan Property was transferred more than one year before the Petition Date, and therefore the Trustee's claim under § 548 is not viable. The Defendant's argument is legally incorrect.

■ Florida Statutes § 48.23 governs notices of lis pendens. The term "lis pendens" literally implies a pending suit, it is

defined as the jurisdiction, power, or control which courts acquire over property involved in a pending suit. *See DePass v. Chitty*, 90 Fla. 77, 105 So. 148 (1925). A notice of lis pendens or actual notice filed on the public records, protects both the lis pendens proponent and third parties. The notice protects the lis pendens proponent's interest both from extinguishment and from any impairment from intervening liens. *See Medical Facilities Dev. Inc. v. Little Arch Creek Props. Inc.*, 675 So.2d 915, 917 (Fla.1996). The notice also protects future purchasers or encumbrancers of the property by informing them that there is a current suit involving the property's title. *Id.*

The duration of a notice of lis pendens is determined by Florida Statutes § 48.23(2) which provides:

**No notice of lis pendens is effectual for any purpose beyond 1 year from the commencement of the action** unless the relief sought is disclosed by the initial pleading to be founded on a duly recorded instrument or on a lien claimed under part I of chapter 713 against the property involved, **except when the court extends the time on reasonable notice and for good cause**. The court may impose such terms for the extension of time as justice requires.

Fla. Stat. § 48.23(2) (1994) (emphasis added).

In the instant case, the Defendant does not assert that the Notice of Lis Pendens was ever extended by a court of competent jurisdiction. Applying Florida Statutes § 48.23(2) the natural expiration of the Notice of Lis Pendens would have occurred on May 29, 1999. Therefore, as of May 29, 1999, the Notice of Lis Pendens was no longer perfected as to prevent a bona fide purchaser from acquiring an interest in the Manalapan Property superior to that of the Debtor.

■ As the Trustee has noted, what did ultimately become of record evidencing the Defendant's interest in the Manalapan Property was the Final Judgment of Specific Performance, which was not recorded until October 27, 1999. Rule 1.570 of the Florida Rules of Civil Procedure provides that:

If the judgment is for a conveyance, transfer, release, or acquittance of real or personal property, the judgment shall have the effect of a duly executed conveyance, transfer, release, or acquittance that is recorded in the county where the judgment is recorded. A judgment under this subdivision shall be effective notwithstanding any disability of a party.

Fla. R. Civ. P. 1.570(d) (1999). In effect, this rule mandates that a judgment for specific performance is considered duly executed when said judgment is recorded. *Kendall Grove Joint Venture v. Martinez–Esteve*, 59 B.R. 407, 409 (S.D.Fla.1986). Accordingly, the Court finds that the Manalapan Property was transferred from the Debtor and to the Defendant on October 27, 1999, the date the Final Judgment was recorded.

## II. The Trustee May Use Her § 544(b) Avoidance Powers to Recover a Fraudulent Transfer Made by the Debtor.

■ The Defendant argues that the Trustee is prohibited from using her § 544(b) "strong-arm" powers to set aside a conveyance made pursuant to a pre-petition state court specific performance judgment. The Defendant relies upon *In re Kendall Grove Joint Venture*, 50 B.R. 64 (Bankr.S.D.Fla.1985), *aff'd*, 59 B.R. 407 (S.D.Fla.1986) in support of his argument.

In *Kendall Grove*, a buyer-real estate developer obtained a state court judgment

for specific performance of his contract for the sale of real property. The decree for specific performance was entered on August 17, 1984, and recorded in the public records on August 22, 1984.

On September 18, 1984, an involuntary petition for bankruptcy was filed against the debtor. Shortly thereafter, the debtor sought to avoid the transfer under 11 U.S.C. § 544. *Kendall Grove,* 50 B.R. at 65. The crux of the debtor's argument in favor of avoidance was that the contract was executory under § 365(a) of the Bankruptcy Code, and therefore could be avoided by the debtor-in-possession. Relying on Rule 1.570 of the Florida Rules of Civil Procedure, the court found that the specific performance decree entered against the debtor was considered duly executed when the judgment was recorded. Therefore, the court found that the contract was not executory, and therefore not subject to avoidance under § 544. *Id.* at 66.

In the present case, the Debtor's reliance on *Kendall Grove* is misplaced. The Trustee herein never alleged that the Contract between the Debtor and the Defendant was executory. Rather, the Trustee is seeking to use her § 544(b) avoidance powers to remedy an alleged fraudulent conveyance. It is hornbook law that a trustee in bankruptcy has both a right and duty to use her avoidance powers in such fashion.

> [t]he procedure for challenging a transfer that was made or the incurrence of an obligation that is purportedly fraudulent, under either section 548 of the Code, or under applicable state law pursuant to the strong arm powers of section 544, is the commencement of an adversary proceeding within the bankruptcy case.

5 Collier on Bankruptcy ¶ 548.06[1], at 548–52.7 (Lawrence P. King ed., 15th ed.1979); *see also* 6 Collier on Bankruptcy ¶ 704.03, at 704–8 (Lawrence P. King ed., 15th ed.1979)(stating that trustees are "representatives of the estate, charged with doing whatever is necessary to advance its interests. Rights of action arising upon the contracts or property of the debtor, not yet resolved into suit, pass to the trustee, and should be asserted in the proper tribunal....") Accordingly, the Court finds that the Trustee is not barred from using her § 544(b) avoidance powers to set aside an alleged fraudulent transfer made by the Debtor to the Defendant.

### III. A Material Dispute of Fact Exists as to Whether the Debtor Received a Reasonably Equivalent Value in Exchange for the Manalapan Property.

■ The crux of the Defendant's argument in favor of Summary Judgment is that the issue of whether the Debtor received a reasonably equivalent value in exchange for the Manalapan Property was litigated previously, in the Defendant's favor, during the State Court Action. Therefore, the Defendant argues that the doctrine of collateral estoppel bars the Trustee from relitigating this issue.

■ Closely related to the doctrine of res judicata is the doctrine of collateral estoppel, or issue preclusion. Under this doctrine, where the subsequent litigation arises from a different cause of action than the prior litigation, relitigation of those issues common to both the prior and subsequent actions that were either expressly or by necessary implication adjudicated in the prior action are barred. *Christo v. Padgett,* 223 F.3d 1324, 1338 n. 46 (11th Cir.2000); *Wallis v. Justice Oaks II, Ltd.* (*In re Justice Oaks II, Ltd.*), 898 F.2d 1544, 1549 n. 3 (11th Cir.1990); *Cope v. Bank Am. Hous. Serv., Inc.,* 2000 WL 1639590, at *4 (M.D.Ala.2000).

Relitigation of an issue is barred under the doctrine of collateral estoppel where the following four elements are present:

(1) The issue at stake is identical to the one involved in the prior proceeding;

(2) The issue was **actually litigated** in the prior proceeding;

(3) The determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the first action; and

(4) The party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Christo,* 223 F.3d at 1339; *Cope,* 2000 WL 1639590, at *8. In the present case, the Defendant has failed to establish the second element of collateral estoppel; the Defendant has failed to show that reasonably equivalent value was actually litigated in the State Court Action.

In his Motion for Summary Judgment, the Defendant asserts that during the State Court Action the Debtor raised as his eighth affirmative defense that the Contract should be set aside because "[a]t the time of the delivery of the [buyer's] offer … the Defendants knew or should have known that the contract was insubstantial in that the value of the property being offered to purchase by the alleged buyer 'Kennedy' was undervalued." Accordingly, the Defendant argues that "[t]he issue of value of the property was raised and adjudicated in the Florida court."

"The first rule for identifying the issues to be precluded is that if there is no showing as to the issues that were actually decided, there is no issue preclusion. The burden is on the party asserting preclusion to show actual decision of the specific issues involved." 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4420 (2002). Although the Defendant makes the assertion that the value of the property was actually litigated in the State Court Action, the Defendant fails to point to any specific findings of fact made by the state court judge. The Final Judgment of Specific Performance makes no reference to whether a reasonably equivalent value was received in exchange for the Manalapan Property. The fact that the issue of the value of the Manalapan Property· was raised as a defense by the Debtor is simply not dispositive that this issue was actually and fully litigated in the state court proceeding. "There is simply no evidence in the state court pleadings that the court made any such decision" as claimed in the argument for preclusion. There was no adjudication "expressly nor by necessary implication." *In re Troy Dodson Contr. Co.,* 993 F.2d 1211, 1214 (5th Cir.1993). Accordingly, this Court finds that the Trustee is not precluded from exploring whether the Debtor received a reasonably equivalent value in exchange for the Manalapan Property.

In his pleadings, the Defendant sets forth various calculations to establish that he paid the Debtor a reasonably equivalent value for the Manalapan Property. Likewise, in the Trustee's pleadings, the Trustee provides a number of theories which conclude that the Defendant *did not* pay a reasonable equivalent value. The Court finds that whether the Defendant paid a reasonably equivalent· value in exchange for the Manalapan Property presents a genuine dispute of material fact. Therefore, summary judgment is inappropriate; a trial will be necessary to resolve this issue.

### IV. A Material Disputes of Fact Exists as to Whether the Debtor was Solvent as of the Transfer Date.

Similarly, there appears to be a genuine dispute of material fact as to the

Debtor's insolvency as of the Transfer Date. In Counts II and III of the Complaint, the Trustee asserts that the Debtor either was insolvent at the time of the transfer of the Manalapan Property, or became insolvent as a result of the transfer.

In his Motion, the Defendant makes the argument that the Debtor "had the ability to pay his debts as they came due," and that the "Trustee will not be able to establish 'balance sheet' insolvency" as required under Florida Statutes § 726.106(1). As argued *supra*, in regards to the value exchanged for the Manalapan Property, the Defendant presents several theories to establish the Debtor's solvency at the time of the transfer. The Defendant relies upon several loan applications to prove that the Debtor was solvent as of the Transfer Date.

Likewise, in response, the Trustee provides a counter-argument, establishing that the Debtor was not solvent as of the transfer date. Not only does the Trustee claim that the loan applications relied on by the Defendant are "wholly, completely and totally inaccurate," the Trustee relies upon several other documents to prove that the Debtor was insolvent at the time of transfer. Clearly, a dispute of fact exists as to the Debtor's insolvency as of the Transfer Date. Here too, this issue must be resolved at trial.

### V. The Trustee Cannot Proceed Under the Equitable Doctrine of Unjust Enrichment.

 Finally, the Defendant argues that the Trustee is not entitled to assert a claim for unjust enrichment as set forth in Count IV of the Complaint. The Defendant asserts that "a claim for unjust enrichment cannot stand where an express contract exists." Since the Manalapan Property was sold pursuant to an express contract, the Defendant argues that the Trustee is precluded as a matter of law from pursuing this claim. Furthermore, the Defendant claims that unjust enrichment is not available where a legal remedy exists.

A claim for unjust enrichment is an equitable claim, based on a legal fiction created by courts to imply a "contract" as a matter of law. Although the parties may have never by word or deed indicated in any way that there was any agreement between them, the law will, in essence, "create" an agreement in situations where it is deemed unjust for one party to have received a benefit without having to pay compensation for it. It derives, not from a "real" contract but a "quasi-contract."

*Tooltrend, Inc. v. CMT Utensili, SRL*, 198 F.3d 802, 805 (11th Cir.1999). In order to maintain a claim for unjust enrichment the Trustee must show that: (1) a benefit was conferred upon the Defendant by the Debtor, (2) appreciation by the Defendant of such benefit, and (3) acceptance and retention of such benefit by the Defendant under such circumstances that it would be inequitable for him to retain it without paying the value thereof. *Id.; Nautica Int'l, Inc. v. Intermarine USA, L.P.*, 5 F.Supp 2d 1333, 1341 (S.D.Fla.1998). "The theory of unjust enrichment is equitable in nature and is, therefore, not available where there is an adequate legal remedy." *Nautica*, 5 F.Supp 2d at 1342.

 In the present case, the Trustee has set forth in several counts fraudulent transfer claims under both federal and state law. Reviewing these statutory claims in the light most favorable to the non-moving party, as required when analyzing a motion for summary judgment, it appears that these claims, if successful, would provide the Trustee with an adequate legal remedy. Moreover, upon re-

viewing the Complaint, the trustee fails to allege that its statutory remedies are inadequate. *See id.* Accordingly, the Court finds that the Trustee cannot proceed under the equitable doctrine of unjust enrichment; summary judgment shall be granted in favor of the Defendant as to Count IV of the Trustee's Complaint.

### ORDER

In accordance with the foregoing analysis and being otherwise fully advised in the premises, the Court hereby **ORDERS AND ADJUDGES** as follows:

1. Summary Judgment is entered in favor of the Trustee and against the Defendant in regards to the Transfer Date. The Transfer Date was October 27, 1999, the date the Final Judgment of Specific Performance was recorded.

2. As to Counts I through III of the Trustee's Complaint, the Defendant's Motion for Summary Judgment is **DENIED**.

3. As to Count IV of the Trustee's Complaint, the Defendant's Motion for Summary Judgment is **GRANTED**.

4. Pursuant to Federal Rule of Bankruptcy Procedure 9021, a separate Final Judgment incorporating these findings of fact and conclusions of law will be entered contemporaneously herewith.